1
2
3
4                    IN THE UNITED STATES DISTRICT COURT

5                  FOR THE EASTERN DISTRICT OF CALIFORNIA

6

7   PASSPORT HEALTH, INC.,            )
                                      )
8                  Plaintiff,         )    2:09-cv-01753-GEB-JFM
                                      )
9           v.                        )    ORDER*
                                      )
10  TRAVEL MED, INC. and GINA FLAHARTY,)
                                      )
11                 Defendants.        )
    _____    )

12

13       On September 28, 2009, Plaintiff and Counter-Claim Defendant

14  Passport Health, Inc. ("Passport") filed a motion under Federal Rules

15  of Civil Procedure 8(a)(2) and 12(b)(6) to dismiss Defendants Travel

16  Med, Inc. ("Travel Med") and Gina Flaharty's (together, the "Counter-

17  Claimants") counterclaim.  (Docket No. 17.)  For the reasons stated

18  below, Passport's motion to dismiss is GRANTED.

19       I.   Legal Standard

20       "Under Federal Rule of Civil Procedure 8(a)(2)[("Rule 8")], a

21  pleading must contain a short and plain statement of the claim showing

22  that the pleader is entitled to relief."  Ascroft v. Iqbal, 129 S. Ct.

23  1937, 1949 (2009)(quotations omitted).  "[T]he pleading standard Rule

24  8 announces does not require detailed factual allegations, but it

25  demands more than an unadorned, the defendant-unlawfully-harmed-me

26  accusation.  A pleading that offers labels and conclusions or a

27  _____

28        *    This matter is deemed to be suitable for decision without oral
    argument.  E.D. Cal. R. 78-230(h).

                                 1

formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice [under Rule 8] if it tenders naked assertions devoid of further factual enhancement." <u>Id.</u> (quotations and citations omitted).

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6)("Rule 12(b)(6)"), the Counter-Claimants must aver in their counterclaim "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009)(quotations omitted). "A [counterclaim] has facial plausibility when the [counter-claimant] pleads factual content that allows the court to draw the reasonable inference that the [counterclaim defendant] is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949. "Where a [counter-claimant] pleads facts that are merely consistent with a [counterclaim] defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (quotations omitted).

II.  <u>Background</u>

Passport is a Maryland corporation.  (Countercl. ¶ 1 (incorporating by reference ¶¶ 1-3 of the amended complaint).) Flaharty is the president of Travel Med, a California corporation. (<u>Id.</u>)

On or about July 27, 2007, the Counter-Claimants entered into a written agreement (the "Franchise Agreement") with Passport in which the Counter-Claimants agreed to operate a Passport franchise. (Countercl. ¶ 3.)

On June 25, 2009, Passport filed a complaint against the Counter-Claimants, alleging that they breached the Franchise Agreement and

1 violated the Lanham Act.  On September 8, 2009, Travel Med and

2 Flaharty filed a counterclaim against Passport, alleging claims of

3 breach of the Franchise Agreement, breach of the implied covenant of

4 good faith and fair dealing, breach of fiduciary duty, intentional

5 interference with prospective business advantage, trade libel and a

6 violation of California's Business & Professions Code § 17200 *et seq.*

7 ("Section 17200").  (Docket No. 14.)

8      Passport's complaint includes a copy of the Franchise Agreement

9 as an exhibit.  This Franchise Agreement is incorporated into the

10 counterclaim by reference. (Countercl. ¶ 3.)  Therefore, the Franchise

11 Agreement may be considered without converting this dismissal motion

12 into a motion for summary judgment.  <u>See</u> <u>Venture Associates Corp. v.</u>

13 <u>Zenith Data Systems Corp.</u>, 987 F.2d 429, 431 (9th Cir. 1993)(stating

14 that "[d]ocuments . . . attache[d] to a motion to dismiss are

15 considered part of the pleadings if they are referred to in the

16 plaintiff's complaint and are central to her claim."); <u>Rose v. Chase</u>

17 <u>Manhattan Bank USA</u>, 396 F.Supp.2d 1116, 1119 (C.D. Cal. 2005)("When a

18 party submits an indisputably authentic copy of a document, and the

19 document is referred to in the complaint, the Court does not have to

20 convert the motion into a summary judgment motion.")

21 III. <u>Discussion</u>

22        A.  <u>Breach of the Franchise Agreement</u>

23      Counter-Claimants' first claim alleges breach of the Franchise

24 Agreement.  (Countercl. ¶¶ 7-11.)  Passport argues Counter-Claimants

25 have failed to state a claim for breach of the Franchise Agreement

26 since "the Franchise Agreement places no affirmative obligations on

27 Passport . . . to 'supervise' Travel Med as it operates its business."

28 (Mot. to Dismiss 4:1-2.)  Counter-Claimants respond that "[p]ursuant

to Section 7 of the Franchise Agreement, Passport . . . was obligated to provide supervision and support to [Counter-Claimants] in their operation of the [Passport] franchise." (Opp'n. 6:3-4.)

In the counterclaim, Counter-Claimants allege that under Section 7 of the Franchise Agreement, Passport "was obligated to provide supervision and support to [Counter]-Claimants in their operation of the [Passport] franchise" and "[Passport] breached the Franchise Agreement by, among other things, failing to provide supervision and support. . . ." (Countercl. ¶¶ 4, 10.) Counter-Claimants further plead that "[a]lmost immediately after executing the Franchise Agreement, [the Counter-Claimants] notice[d] several flaws in [Passport's] franchise system . . . . [In the] few months after the Franchise Agreement was executed, Counter-Claimants identified and presented several flaws in the franchise business model to [Passport]. [Passport] either responded that Counter-Claimants would 'get used to' the flaws, or learn to 'deal' with the errors in the [Passport] plan. At no time did [Passport] correct or address the identified flaws and problems even though [Passport] was obligated to do so pursuant to the Franchise Agreement." (Id. ¶ 5.)

Counter-Claimants, however, have not cited to a specific provision or language in the Franchise Agreement that supports their allegation. Section 7 of the Franchise Agreement is over two pages long and includes fourteen subsections, yet none require Passport to provide "supervision and support" to Counter-Claimants or impose an obligation on Passport to "correct or address" flaws in the franchise system identified by Counter-Claimants. Therefore, "[e]ven if the [Counter-Claimants'] allegations are true, they are not breaches of any provision in the [Franchise Agreement]." Gibson v. Office of the

4

1  <u>Attorney Gen.</u>, 561 F.3d 920, 929 (9th Cir. 2009).  Accordingly,

2  Counter-Claimants' first claim for breach of the Franchise Agreement

3  does not state sufficient factual matter to withstand Passport's

4  motion and is dismissed.

5        B.  <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

6        Passport argues Counter-Claimants' second claim for breach of the

7  implied covenant of good faith and fair dealing should also be

8  dismissed since Counter-Claimants do not allege that Passport lacked

9  subjective good faith or that Passport took acts to frustrate the

10  common purpose of the Franchise Agreement.  (Mot. to Dismiss 4-5;

11  Reply 3.)  Counter-Claimants rejoin they have alleged sufficient

12  "facts to show that [Passport] has acted in a way to frustrate Travel

13  Med's rights and to deny Travel Med the benefits of the Franchise

14  Agreement."  (Opp'n. 8-9.)

15        In their counterclaim, Counter-Claimants plead Passport "breached

16  the implied covenant of good faith and fair dealing by, among other

17  things, refusing and failing to respond to [the] Counter-Claimant's

18  specific concerns related to the [Passport] franchise business and by

19  interfering with [the] Counter-Claimants relationships with suppliers

20  and customers."  (Countercl. ¶ 14.)

21        Under California law, in "every contract there is an implied

22  covenant that neither party shall do anything which will have the

23  effect of destroying or injuring the right of the other party to

24  receive the fruits of the contract."  <u>Locke v. Warner Bros., Inc.</u>, 57

25  Cal.App.4th 354, 363 (1997)(quotations omitted).  "[T]he covenant is

26  implied as a *supplement* to the express contractual covenants, to

27  protect a contracting party from engaging in conduct which (while not

28  technically transgressing the express covenants) frustrates the other

party's rights to the benefits of the contract."  <u>Racine v. Laramie,</u>
<u>Ltd. v. Department of Parks & Recreation</u>, 11 Cal.App.4th 1026, 1031-32
(1992).  However, "the implied covenant of good faith and fair dealing
cannot impose substantive duties or limits on the contracting parties
beyond those incorporated in the specific terms of their agreement."
<u>Spiegler v. Home Depot U.S.A., Inc.</u>, 552 F.Supp.2d 1036, 1054 (C.D.
Cal. 2008).  Finding "[i]mplied covenants [is] justified only when
they are not inconsistent with some express term of the contract, and
in the absence of such implied terms, the contract could not be
effectively performed."  <u>Id.</u>

The Franchise Agreement clearly outlines the "standards,
policies, and procedures" Counter-Claimants were to follow in
operating a franchise and the "guidance and assistance" Passport would
provide at its discretion.  (Compl., Ex. A.)  Under the Franchise
Agreement, Passport was under no obligation to "respond to Counter-
Claimant's specific concerns" related to the Passport franchise model.
Reading such a requirement into the Franchise Agreement is not
necessary for the contract to be effectively performed as written and
would be inconsistent with the express terms of the parties'
agreement.  Moreover, Counter-Claimants' bare assertion that Passport
"interfer[ed] with Counter-Claimants' relationships with suppliers and
customers," is a "naked assertion[] devoid of further factual
enhancement" sufficient to state a claim for breach of the implied
covenant of good faith and fair dealing.  <u>Iqbal</u>, 129 S. Ct. at 1949.
Accordingly, Counter-Claimants' second cause of action for breach of
the implied covenant of good faith and fair dealing fails to state a
claim and is dismissed.
///

   C.   Breach of Fiduciary Duty

      Passport further argues Counter-Claimants' third cause of action
for breach of fiduciary duty should be dismissed since Counter-
Claimants have not pled that there was a fiduciary relationship and no
fiduciary relationship existed between the parties.  (Mot. to Dismiss
5-6; Reply 3-4.)  Counter-Claimants rejoin a "special relationship
existed between [Passport] and Travel Med such that [Passport] owed a
fiduciary duty to Travel Med."

      The Counter-Claimants' plead Passport owed them a duty of loyalty
and a duty of care and breached these duties by, "providing Counter-
Claimants with inaccurate software[,] . . . refusing to correct
errors identified by Counter-Claimants" and by "failing to disclose
hidden mark ups and profits in [Passport's] group purchase
organization."  (Countercl. ¶¶ 17-19.)

      Under California law, a "fiduciary relationship is created where
a person reposes trust and confidence in another and the person in
whom such confidence is reposed obtains control over the other
person's affairs."  Recorded Picture Co. v. Nelson Entertainment,
Inc., 53 Cal.App.4th 350, 370 (1997)(quotations omitted).  However,
under California law, a "fiduciary relationship is not created by a
franchisor-franchisee relationship."  Strawflower Electronics, Inc. v.
RadioShack Corp., 2005 WL 2290314, at *4 n.2 (N.D. Cal. Sept. 20,
2005); see also Boat & Motor Mart v. Sea Ray Boats, Inc., 825 F.2d
1285, 1292 (9th Cir. 1987)(holding that under California law, "[t]he
relation between a franchisor and a franchisee is not that of a
fiduciary to a beneficiary."); In re Sizzler Restaurants
International, Inc., 225 B.R. 466, 473 n.3 (Bankr. C.D. Cal.

1998)(stating "as a matter of California law, a franchisor does not
owe a franchisee any fiduciary duties.").

Since no fiduciary relationship existed between Passport and the
Counter-Claimants by virtue of the Franchise Agreement, the Counter-
Claimants may not state a claim for breach of fiduciary duty as a
matter of law.  Therefore, Counter-Claimants' third claim for breach
of fiduciary duty is not actionable under California law and is
dismissed with prejudice.

D.    Intentional Interference with Prospective Business Advantage

Passport also seeks dismissal of Counter-Claimants' fourth cause
of action for intentional interference with prospective business
advantage, arguing the claim lacks sufficient factual allegations to
state a viable claim.  (Mot. to Dismiss 6-7, Reply 5.)

Under this claim, Counter-Claimants plead "there was an existing
economic relationship between Counter-Claimants and potential
customers"; "[Passport] knew of the relationship between [the]
Counter-Claimants and the specific potential customers"; "[Passport]
committed intentional acts designed to interfere with the relationship
between Counter-Claimants and their potential customers" by telling
the potential customers that "Counter-Claimants were 'incapable of
performing nationwide services' for them"; "[t]he relationship between
Counter-Claimants and their potential customers was actually
interrupted"; and "[a]s a direct and proximate cause of [Passport's]
interference, [the] Counter-Claimants have suffered damages in an
amount unknown at this time, but subject to proof at trial."
(Countercl. ¶¶ 22-26.)

Under California law, the elements of a claim for intentional
interference with prospective business advantage are: "(1) an economic

relationship exists between the plaintiff and some third party, with
the probability of future economic benefit to the plaintiff; (2) the
defendant's knowledge of the relationship; (3) intentional acts on the
part of the defendant designed to disrupt the relationship; (4) actual
disruption of the relationship; and (5) economic harm to the plaintiff
proximately caused by the acts of the defendant." Korea Supply Co. v.
Lockheed Martin Corp., 29 Cal.4th 1134, 1153 (2003).  To satisfy the
third element, "a plaintiff must plead . . . that the defendant's acts
are wrongful apart from the interference itself." Id. at 1154.

     Counter-Claimants' claim for intentional interference with
prospective business advantage does not satisfy the requirements of
Rule 8 since it merely restates the elements of the cause of action.
"[A] formulaic recitation of the elements of a cause of action will
not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

     Counter-Claimants have also failed to state a claim under Rule
12(b)(6) since they have not sufficiently pled that an economic
relationship existed between themselves and a "third-party" with the
probability of future economic benefit.  "Allegations that amount to a
mere hope for an economic relationship and a desire for future benefit
are inadequate to satisfy the pleading requirements of the first
element of the tort." Google Inc. v. American Blind & Wallpaper
Factory, Inc., 2005 WL 832398, at *8 (N.D. Cal. Mar. 30,
2005)(dismissing claim for intentional interference with prospective
business advantage because relationship with "repeat customers" was
too speculative and did not "rise to the level of the requisite
promise of future economic advantage") (quotations omitted).  Counter-
Claimants mere assertion that an economic relationship exists with
"potential customers" is insufficient to state a claim.  See id; see

1  also Roth v. Rhodes, 25 Cal.App.4th 530, 546 (1994)(affirming judgment

2  on the pleadings on intentional interference with prospective business

3  advantage claim when plaintiff's claim was predicated on alleged

4  interference with relationship with "future patients").  Counter-

5  Claimants have also failed to plead that Passport's alleged

6  interference was otherwise wrongful, as required by the third-element

7  of the tort.  Accordingly, Counter-Claimants' fourth claim for

8  intentional interference with prospective business advantage fails to

9  state a claim and is dismissed.

10       E.   Trade Libel

11       Passport also seeks dismissal of Counter-Claimants' fifth cause

12  of action in which trade libel is alleged, arguing that the Counter-

13  Claimants' "conclusory allegations [in that claim] are not entitled to

14  a presumption of truth and cannot state a claim" since Counter-

15  Claimants have failed to sufficiently plead that they have suffered

16  economic damages as a result of the alleged statements of trade libel.

17  (Mot. to Dismiss 7; Reply 5-6.)

18       Counter-Claimants allege in this claim that "[i]n or about June

19  2009 and July 2009, [Passport] published untrue facts regarding

20  [Travel Med]" and that "[w]hen [Passport] published these untrue

21  facts, [Passport] knew they were false, or published them with

22  reckless disregard for the truth of the facts."  (Countercl. ¶¶ 27-

23  28.)  "Among the un[true] facts published by [Passport] are 'Travel

24  Med Inc. cannot perform nation wide services,' and 'Travel Med Inc. is

25  using [Passport's] materials' and 'Travel Med Inc. is in trouble.'"

26  (Id. ¶ 31.)

27       "Trade libel is the publication of matter disparaging the quality

28  of another's property, which the publisher should recognize is likely

10

to cause pecuniary loss to the owner.  The tort encompasses all false
statements concerning the quality of services or product of a business
which are intended to cause that business financial harm and in fact
do so.  To constitute trade liable, a statement must be false."
ComputerXpress, Inc. v. Jackson, 93 Cal.App.4th 993, 1010
(2001)(quotations and citations omitted).  "Since mere opinions cannot
by definition be false statements of fact, opinions will not support a
cause of action for trade libel."  Id. at 1010-11.

     Stating a "cause of action for trade libel thus requires: (1)
publication, (2) which induces others not to deal with plaintiff, and
(3) special damages."  Aetna Cas. and Sur. Co., Inc. v. Centennial
Ins. Co., 838 F.2d 346, 351 (9th Cir. 1998).  To satisfy the third-
element, the pleader must "allege special damages specifically, by
identifying customers or transactions lost as a result of [the]
disparagement . . . .  The plaintiff in a trade libel case thus may
not rely on a general decline in business arising from the falsehood,
and must instead identify particular customers and transactions of
which it was deprived as a result of the [alleged trade] libel."
Eagle Broadband, Inc. v. Mould, 2007 WL 4358515 (Cal. Ct. App. Dec.
14, 2007)(quotations and citations omitted).

     Counter-Claimants have not demonstrated that the statements
giving rise to their trade libel claim are false or not mere
statements of opinion.  Moreover, Counter-Claimants' bare allegation
that they "have suffered damages in an amount unknown at this time" is
insufficient to satisfy the pleading requirements for the element of
special damages in a trade libel claim.  Therefore, Counter-Claimants
trade libel claim fails to state a claim and is dismissed.
///

F.   <u>Unfair Business Practices Under Section 17200</u>

Passport also seeks dismissal of Counter-Claimants' Section 17200 claim, arguing that it "fails because [Counter-Claimants] do not have standing to assert the claim."  Passport contends a Section 17200 claim "may only be asserted by a person who has suffered [an] *injury in fact* and has actually lost money or property as a result of [the alleged acts constituting] unfair competition."  (Mot. to Dismiss 8:7-10)(emphasis in original).  Counter-Claimants rejoin the amount of damages suffered is currently unknown and is to be revealed through discovery.  (Opp'n. 11.)

Under this claim, Counter-Claimants plead Passport's acts "constitute unfair business practices" in violation of Section 17200. (Countercl. ¶¶ 34, 33-36.)  Specifically, Counter-Claimants allege "[Passport's] actions of selling . . . franchises while advertising that [Passport] will provide supervision and support to its new franchisees, all the while knowing that its Passageware software contained severe and dangerous inaccuracies and flaws constitutes acts that would likely deceive the general public.  Further, [Passport's] act of publishing untrue statements of Travel Med Inc's ability to perform national contracts constitutes an unfair business practice because the general public is likely to be deceived by [Passport's] untrue statements.  Also, [Passport's] forgery of documents related to Counter-Claimants relationship with a supplier is likely to deceive the public because [Passport] presented the forged document as a truthful, accurate and lawful document."  (<u>Id.</u> ¶ 35.)

"[A] plaintiff suffers an injury in fact for purposes of standing under [Section 17200] when he or she has: (1) expended money due to the defendant's acts of unfair competition; (2) lost money or

property; or (3) been denied money to which he or she has a cognizable claim." Hall v. Time Inc., 158 Cal.App.4th 847, 854 (2008)(quotations and citations omitted). Counter-claimants' assertion that they "have suffered damages in an amount unknown at this time" as a result of Passport's alleged unfair business practices, does not fall into any of the definitions outlined in Hall. Counter-Claimants, therefore, have not pled facts demonstrating they have suffered an injury in fact from Passport's alleged unfair business practices. Accordingly, Counter-Claimants have not alleged "enough facts to state a claim to relief that . . . is plausible on its face." Chavez v. Blue Sky Natural Beverage Co., 2009 WL 1956225, at *3 (9th Cir. June 23, 2009)(holding that complaint, which alleged plaintiff had personally lost the purchase price of beverages he purchased, was sufficient to state an injury in fact)(quotations omitted). Since Counter-Claimants' sixth cause of action fails to state sufficient facts to withstand Passport's dismissal motion, this claim is dismissed.

IV.  Conclusion

     For the reasons stated above, Passport's motion to dismiss Counter-Claimants' counterclaim is GRANTED and the counterclaim is dismissed. However, Counter-Claimants are granted ten (10) days from the date on which this order is filed within which to file an amended counterclaim curing any deficiencies in a claim addressed above that is not dismissed with prejudice.

Dated:  November 13, 2009

_____
GARLAND E. BURRELL, JR.
United States District Judge