IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASSPORT HEALTH, INC., a Maryland corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>TRAVEL MED, INC., a California corporation and GINA FLAHARTY an individual and citizen of the State of California,<br><br>            Defendants.<br>_____<br>TRAVEL MED, INC., a California corporation and GINA FLAHARTY an individual and citizen of the State of California,<br><br>            Counter-Claimants,<br>     v.<br><br>PASSPORT HEALTH, INC., a Maryland corporation,<br><br>            Counter-Claim<br>            Defendants.<br>_____ | 2:09-CV-01753-GEB-JFM<br><br>ORDER GRANTING AND DENYING IN PART COUNTER-CLAIM DEFENDANT'S MOTION TO DISMISS COUNTER-CLAIMANTS' AMENDED COUNTERCLAIM[*] |

        Plaintiff and Counter-Claim Defendant, Passport Health, Inc. ("Passport"), filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Defendants Travel Med, Inc. ("TMI") and Gina Flaharty's (collectively, the "Counter-Claimants") amended counterclaim. A previous order, filed on November 16, 2009, granted

---

    [*]    This matter is deemed to be suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

Passport's motion to dismiss the Counter-Claimants' original counterclaim. Counter-Claimants, however, filed an amended counterclaim on November 26, 2009. Passport argues the claims alleged in the amended counterclaim remain deficient and should be dismissed. For the reasons stated below, Passport's motion to dismiss is GRANTED AND DENIED IN PART.

## I. DISCUSSION[1]

### A. Breach of the Franchise Agreement

Passport argues Counter-Claimants' first claim for breach of the Franchise Agreement (the "Agreement") should be dismissed since Counter-Claimants' allegations, even if true, do not constitute breaches of the Agreement.[2] Counter-Claimants argue the amended counterclaim specifies the sections of the Franchise Agreement that Passport allegedly breached and Passport's conduct giving rise to their claims of breach. (Opp'n 3:17-20.)

Under California law, "[a] cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1489 (2006) (citation omitted). Counter-Claimants allege "TMI has performed all contractual obligations pursuant to the Franchise Agreement except those obligations excused by [Passport's] breach of the Franchise Agreement." (Amended Countercl. ¶ 51.)

---

[1] The applicable legal standard and background can be found in the court's previous order. See Passport Health, Inc. v. Travel Med, Inc., No. 2:09-cv-01753-GEB-JFM, 2009 WL 3824743 (E.D. Cal. Nov. 16, 2009).

[2] As noted in the previous order, the Franchise Agreement is attached to Passport's amended complaint and is incorporated into the amended counterclaim by reference. (Amended Countercl. ¶ 3.)

2

Counter-Claimants further allege that Passport breached Sections 2(a), 7(b), 7(g), 7(j), 9(a) and 9(b) of the Agreement. (Id. ¶¶ 55, 60, 63, 66, 69, 72, 75, 78, 81, 85, 88, 91, 94.)

**1.   Section 2(a)**

Section 2(a) of the Agreement states: "Subject to the terms and provisions of this Agreement, [Passport] grant[s] [TMI] the right (a) to use the System to operate the Franchised Business at and from the Franchise Sites . . . ." The "System" refers to "[t]he confidential, proprietary system relating to the operation of health travel businesses[,] . . . developed and . . . owned by [Passport] . . . ."

Counter-Claimants allege Passport breached Section 2(a) of the Agreement "by failing to provide 'the System' to TMI . . . [and] by not providing any distinctive and unique training, marketing, management methods, procedures and materials to TMI." (Amended Countercl. ¶ 55.) This allegation, however, fails to allege a breach of Section 2(a). Through Section 2(a), Passport only "grant[ed] [TMI] the right . . . to use the System"; Section 2(a) imposes no obligation on Passport to provide the System nor to provide any training, marketing, or other materials to Counter-Claimants. Therefore, even if Counter-Claimants' allegations are true, they have failed to allege a breach of the Agreement.

**2.   Section 7(b)**

Counter-Claimants also allege Passport violated various provisions of Section 7(b) of the Agreement. Section 7(b) provides, in pertinent part:

> [Passport] shall furnish to [TMI] such guidance and assistance as [Passport] believe[s] appropriate, related to the following:

```
       (i)    advice and written materials concerning
              methods, standards, and operating procedures
              that [TMI] should be using in the operation
              of [TMI's] Franchised Business as such are
              developed by [Passport] from time to time,
              including new developments and improvements
              in product marketing and delivery of
              services;
       (ii)   methods, standards, and operating procedures
              for [TMI] to follow in purchasing and selling
              approved goods and services, as such are
              developed and modified by [Passport] from
              time to time;
      (iii)   negotiation of supplier arrangements on
              behalf of the Passport Health system and
              franchisees conducting business thereunder,
              including system-wide discounts where
              available, and a list of approved suppliers
              from whom [TMI] may purchase; . . .
        (v)   formulation and implementation of advertising
              and promotional material and programs for
              [TMI] and other franchisees to use in the
              operation and promotion of the Franchised
              Business in local advertising and promotion
              (as more fully described in Section 14); . . .
      (vii)   an initial training program for [TMI's] Nurse
              Manager and Administrative Assistant (and
              other personnel) and other training programs
              (as described in Section 9); . . .
     (viii)   on-site post-opening training at the first
              Franchise Site in accordance with the
              provisions of Section(b) . . .
       (xv)   develop and publish a periodic newsletter for
              use and distribution to franchisees and to
              [TMI's] customers . . . .
       Such guidance shall, in our discretion, be
       furnished in the form of [Passport's] Manual,
       bulletins, and other written materials; national,
       regional and other group meetings; and telephone
       consultations or consultations at our offices or
       at the Franchise Site . . . .  In addition, if
       requested by [TMI] and deemed appropriate by
       [Passport], [Passport] will furnish additional
       guidance and assistance without charge . . . ;
       provided, however, [Passport] may require [TMI] to
       reimburse [Passport] for all out-of-pocket
       expenses reasonably incurred by [Passport] in
       connection with furnishing such additional
       guidance and assistance . . . .
```

Counter-Claimants allege Passport breached the above subsections of

Section 7(b) by: "providing methods and procedures that were

1  inefficient, inaccurate and flawed,"; "providing flawed and defective
2  methods, standards and procedures"; "concealing the fact that
3  [Passport] was receiving 'kick-back' profits from some negotiated
4  group purchase agreements"; "not providing a usable website to TMI, by
5  failing to provide any usable advertising or promotional materials or
6  programs to TMI for use in local advertising and promotions"; "failing
7  to have a competent training program"; failing "to provide any
8  training to TMI after TMI opened its doors"; "failing to negotiate and
9  maintain corporate accounts in a method that would provide profitable
10 accounts for TMI"; and "by producing a newsletter that utterly failed
11 to accomplish the goal of producing a newsletter that could be
12 distributed to customers."  (Amended Countercl. ¶¶ 60, 63, 66, 69, 75,
13 78, 81.)
14        Section 7(b), however, imposes no duties upon Passport.
15 Rather, it explicitly states that Passport "shall furnish such
16 guidance and assistance as [Passport] believes appropriate . . . ."
17 Therefore, even if Counter-Claimants' allegations are true, they fail
18 to allege a breach of any subsection of Section 7(b).
19 **3.  Section 7(g)**
20        Section 7(g) of the Agreement states "[TMI] shall comply
21 with, and cause each of [its] employees to comply with all federal,
22 state and local laws, rules and regulations in connection with the
23 operation of the Franchised Business.  In addition, [TMI] shall
24 maintain and cause each of [its] employees to maintain all required
25 medical and business records, professional licenses, permits and
26 certifications."
27        Counter-Claimants allege Passport breached this provision by
28 "asking TMI to repeatedly violate HIPAA."  (Amended Countercl. ¶ 85.)

Section 7(g), however, only places a duty upon TMI. Therefore, even if Counter-Claimants' allegation is true, Counter-Claimants have not alleged a breach of Section 7(g).

**4.  Section 7(j)**

Section 7(j) of the Agreement provides, in relevant part: "[Passport] reserve[s] the right to require [TMI] to use the Software [Passport] develop[s], or ha[s] developed for [Passport], for use in the Franchised Business." Counter-Claimants allege Passport breached Section 7(j) "by providing a flawed software program to TMI" that was unuseable. (Amended Countercl. ¶ 88.) Counter-Claimants' allegations, however, do not constitute a breach of the Agreement since Section 7(j) does not require that Passport provide TMI with a "useable software program"; rather, Section 7(j) simply states that Passport "reserve[s] the right to require" TMI to use certain software. Therefore, even if Counter-Claimants' allegations are true, they do not constitute a breach of Section 7(j).

**5.  Section 9(a)**

Section 9(a) of the Agreement, entitled "Training Program," provides, in relevant part:

> Following the execution hereof and prior to the opening of the Franchised Business, [Passport] shall provide through [Passport's] Training Program basic training in the organization and operation of the Franchised Business to [TMI's] Nurse Manager. [TMI's] Nurse Manger shall attend and complete the Training Program to [Passport's] satisfaction before opening the Franchised Business to the public.

The term "Training Program" is defined in the Agreement as "[t]he basic training program offered by [Passport] pursuant to which [TMI's] Nurse Manager and Administrative Assistant . . . are initially trained to operate the Franchised Business. The Training Program will include

6

1 instruction on such topics, and be conducted at such location or
2 locations, as [Passport] may from time to time designate."
3       Counter-Claimants allege Passport breached Section 9(a) "by
4 failing to provide training to TMI prior to the opening of the Franchise
5 Business." (Amended Countercl. ¶ 43.) However, Counter-Claimants also
6 allege "[r]ather than providing actual training to TMI, [Passport] . .
7 . had TMI meet with pharmaceutical sales representatives not affiliated
8 with [Passport] to discuss the different brands of vaccines available."
9 (Id.)
10       Counter-Claimants allegations do not state a breach of
11 Section 9(a). Section 9(a) only requires Passport to provide TMI's
12 Nurse Manager with training through Passport's Training Program, prior
13 to the opening of the franchise. The content of the Training Program,
14 however, is left to Passport's discretion. Counter-Claimants
15 allegations are contradictory and suggest that TMI did receive some
16 training but that TMI found such training unsatisfactory. Since the
17 Agreement allows Passport to dictate the training provided, Counter-
18 Claimants' allegations, even if true, do not state a breach of Section
19 9(a).
20 **6. Section 9(b)**
21       Lastly, Counter-Claimants allege Passport breached section
22 9(b) of the Agreement. Section 9(b) provides, in pertinent part:
23 "[TMI's] Nurse Manager must attend the post-opening training to be
24 provided at [TMI's] first Franchise Site within six (6) weeks after
25 [TMI's] first Franchise Site opens for business." Counter-Claimants
26 allege Passport breached Section 9(b) "by failing to provide post-
27 opening training to TMI." (Amended Countercl. ¶ 94.) Section 9(b),
28 however, does not require Passport to provide TMI "post-opening

1  training"; the Agreement does not state who is to provide such
2  training.  Counter-Claimants' allegations, even if true, do not state
3  a breach of Section 9(b) of the Agreement.
4         Therefore, Counter-Claimants' have not stated a claim for
5  breach of the Agreement, and this claim is dismissed.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

7         Passport also argues Counter-Claimants' second claim for
8  breach of the implied covenant of good faith and fair dealing should
9  be dismissed since Passport has complied with the terms of the
10 Agreement.  Specifically, Passport argues it has "complied with the
11 express terms of the Franchise Agreement, and . . . [t]hus, Passport .
12 . . has also complied with the implied covenant of good faith and fair
13 dealing, and [TMI's] cause of action for breach of the implied
14 covenant should be dismissed."  (Mot. to Dismiss 4:6-10.)  Counter-
15 Claimants respond that they have alleged facts demonstrating Passport
16 "acted in a way that frustrated the purpose of the Franchise
17 Agreement."  (Opp'n 4:27.)
18         "It is well-established that a breach of the implied
19 covenant of good faith is a breach of the contract, and that breach of
20 a specific provision of the contract is not a necessary prerequisite
21 to a claim for breach of the implied covenant of good faith and fair
22 dealing."  Schwartz v. State Farm Fire & Cas. Co., 88 Cal. App. 4th
23 1329, 1339 (2001) (citations omitted).  Passport, therefore, has not
24 shown that Counter-Claimants' claim should be dismissed.  The portion
25 of Passport's motion seeking to dismiss Counter-Claimants' breach of
26 the implied covenant of good faith and fair dealing claim is denied.
27 //
28 //

**C.   Trade Libel**

Passport further seeks dismissal of the Counter-Claimants' trade libel claim, arguing "they have failed to adequately plead multiple essential elements of their claim." (Mot. to Dismiss 4:12-13.) Specifically, Passport argues Counter-Claimants have not adequately alleged that Passport published a false statement or that Passport acted with actual malice. Counter-Claimants do not oppose dismissal of their trade libel claim.

In this claim, Counter-Claimants allege that "[i]n or about June 2009 and July 2009, [Passport] published untrue facts regarding TMI and Flaharty"; and "[w]hen [Passport] published these untrue facts, [Passport] knew they were false, or published them with reckless disregard for the truth of the facts." (Amended Countercl. ¶¶ 105-106.) Counter-Claimants further allege "[a]mong the untrue statements published by [Passport], [were] '[TMI] cannot perform nation-wide services' and '[TMI] is using [Passport's] materials' and '[TMI] is in trouble.'" (Id. ¶ 108.) Further, Counter-Claimants allege "[Passport also] told TMI and Flaharty's customers and suppliers that TMI and Flaharty were operating in violation of the law and would be shut down" and "[Passport] . . . told each [Passport] franchisee to not communicate with TMI and Flaharty and if they did, they would be subpoenaed as witnesses in the instant action." (Id.) Counter-Claimants plead these statements caused them to "suffer[] damages in the form of lost profits from customers who were scared off by [Passport's] untrue remarks and in the form of increased costs in dealing with suppliers who believed [Passport's] untrue comments about TMI's and Flaharty's ability to conduct business in the future in an amount unknown at this time . . . ." (Id. ¶ 109.)

"Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner.  The tort encompasses all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so." ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1010 (2001) (quotations and citations omitted).  "Since mere opinions cannot by definition be false statements of fact, opinions will not support a cause of action for trade libel." Id. at 1010-11. To allege a "cause of action for trade libel [a Plaintiff is required to allege]: (1) publication, (2) which induces others not to deal with plaintiff, and (3) special damages." Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co., 838 F.2d 346, 351 (9th Cir. 1998) (applying California law).  The third element "requires pleading and proof of special damages in the form of pecuniary loss." Leonardini v. Shell Oil. Co., 216 Cal. App. 3d 547, 572 (1989).  The pleader "may not rely on a general decline in business arising from the falsehood, and must instead identify particular customers and transactions of which [they] were deprived as a result of the [trade] libel." Mann v. Quality Old Time Serv., Inc., 120 Cal. App. 4th 90, 109 (2004).  "This means, in the usual case, that the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived." Erlich v. Etner, 224 Cal. App. 2d 69, 73-74 (1964) (quotations and citation omitted).

Counter-Claimants' allegations that they have suffered "lost profits from customers who were scared off" and "increased costs in dealing with suppliers who believed [Passport's] untrue comments"

10

describe a general decline in business that is insufficient to plead special damages. See Continental D.I.A. Diamond Products, Inc. v. Dong Young Diamond Indus. Co., Ltd, No. C. 08-02136 SI, 2009 WL 330948, at *6 (N.D. Cal. Feb. 10, 2009) (dismissing trade libel claim, in part, for failure to allege "pecuniary value of lost business"). Therefore, Counter-Claimants' trade libel claim is dismissed.

**D. Intentional Interference with Prospective Business Advantage**

Passport also seeks dismissal of Counter-Claimants' intentional interference with prospective business advantage claim. Passport contends Counter-Claimants have not pled that the alleged interference was wrongful.

Counter-Claimants allege that "[i]n June and July 2009, there was an existing economic relationship between TMI and Flaharty . . . and . . . other potential customers including CSL Biotherapies"; "[Passport] knew of the relationship between Counter-Claimants and the specific potential customers"; "[Passport] committed intentional acts designed to interfere with the relationship between TMI and Flaharty and their potential customers," including telling "potential customers . . . that TMI and Flaharty were 'incapable of performing nationwide services' . . ., that TMI and Flaharty would not be in business long and that it would be trouble for those potential customers to do business with TMI and Flaharty"; "[t]he relationship between TMI and Flaharty and their potential customers was actually interrupted"; and as "a direct and proximate cause of [Passport's] interference, TMI and Flaharty have suffered damages because at least two customers decided not to do business with TMI and Flaharty as a result of the false statements made by [Passport]." (Amended Countercl. ¶¶ 111-115.)

The elements of a claim for intentional interference with

prospective business advantage under California law are: "(1) an economic relationship exists between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153 (2003). "The tort of interference with prospective business advantage applies to interference with <u>existing</u> noncontractual relations which hold the promise of future economic advantage. In other words, it protects the expectation that the relationship will eventually yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will eventually arise." Google Inc. v. Am. Blind & Wallpaper Factory, Inc., No. C 03-05340 JF, 2005 WL 832398, at *8 (N.D. Cal. Mar. 30, 2005) (quoting Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507 (1996)).

        Counter-Claimants' intentional interference with prospective business advantage claim is deficient since Counter-Claimants have not sufficiently alleged that an economic relationship existed between themselves and a third-party with the promise of future economic advantage. Counter-Claimants' alleged relationship with "potential customers" is insufficient to satisfy the first element of this claim. See Google, 2005 WL 832398, at *8 (dismissing intentional interference with prospective business advantage claim because relationship with "repeat customers" was too speculative and did not "rise to the level of the requisite promise of future economic advantage") (quotations

omitted); see also Westside Ctr. Assocs., 42 Cal. App. 4th 507 (holding that alleged relationship with prospective buyer was insufficient because probability of future economic benefit was too speculative). "Allegations that amount to a mere hope for an economic relationship and a desire for future benefit are inadequate to satisfy the pleading requirements of the first element of the tort." Google, 2005 WL 832398, at *8 (quoting Blank v. Kirwan, 39 Cal. 3d 311, 331 (1985) (holding, in part, that alleged relationship with potential club patrons was insufficient to state an intentional interference with prospective business advantage claim)). Therefore, Counter-Claimants' intentional interference with prospective business advantage claim is dismissed.

### E.  Unfair Business Practices

Passport lastly argues Counter-Claimants' unfair business practices ("UCL") claim should be dismissed since Flaharty has not established that she has suffered an injury in fact; Counter-Claimants improperly seek damages; and Counter-Claimants have not alleged any wrongful or unfair business practices.

Counter-Claimants allege Passport's "acts constitute unfair business practices such that the public would likely be deceived . . . ." (Amended Countercl. ¶ 117.) Counter-Claimants factual allegations concerning Passport's conduct include:

> Passport's . . . selling [of Passport] franchises while advertising that [Passport] shall provide guidance and assistance as described in Section 7 of the Franchise Agreement to its new franchisees, all the while knowing that [Passport] would not meet those obligations.  Also, [Passport] knows that its representation that it will perform Sections 2, 7 and 9 of the Franchise Agreement, all the while knowing that it would not perform those obligations to any current or new franchisee is likely to mislead the public.  Further,

13

> [Passport's] act of publishing untrue statements of TMI's ability to perform national contract constitutes an unfair business practice because the general public is likely to be deceived by [Passport's] untrue statements. Also, [Passport's] forgery of documents related to TMI's relationship with a supplier is likely to deceive the public because [Passport] presented the forged document as a truthful, accurate and lawful document.

(Id. ¶ 118.) Counter-Claimants allege they "have suffered damages in the form of royalty payments that TMI and Flaharty would not have paid if [Passport] had not acted in such a fraudulent and unlawful way." (Id. ¶ 119.)

Counter-Claimants' allegation that "they have suffered damages in the form of royalty payments" satisfies the injury-in-fact requirement since Counter-Claimants allege they have "expended money due to defendant's acts of unfair competition." Hall v. Time Inc., 158 Cal App. 4th 847, 854 (2008). Although Passport argues that only TMI made royalty payments, the allegations in the amended counterclaim are presumed to be true. Further, while Passport argues damages are not an available remedy for an unfair competition claim, Counter-Claimants' amended counterclaim only alleges that "TMI and Flaharty are entitled to injunctive relief." (Amended Countercl. ¶ 119.) Lastly, Passport argues that Counter-Claimants' "allegations . . . of wrongful conduct are based on the same actions that underlie [the] claim for breach of contract" and therefore Counter-Claimants "have not established that [Passport] behaved wrongfully or engaged in any unfair business practice." This argument, however, overlooks Counter-Claimants' allegations that do not constitute alleged breaches of the Agreement, including Counter-Claimants' allegations that Passport published "untrue statements" and forged documents. Therefore,

1 | Passport has not shown Counter-Claimants' UCL claim should be
2 | dismissed and this portion of their motion is denied.

### IV.  CONCLUSION

For the stated reasons, Passport's dismissal motion is GRANTED AND DENIED IN PART.  While Counter-Claimants request that they be granted leave to amend any dismissed claim, they have not explained how further amendment would be productive.  The amended counterclaim contains many of the same deficiencies that were identified in the court's previous order dismissing the original counter-claim.  Therefore, it appears that further amendment would be futile.  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (stating that "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.")  Accordingly, the dismissed claims are dismissed without leave to amend.

Dated:  May 11, 2010

GARLAND E. BURRELL, JR.
United States District Judge