IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASSPORT HEALTH, INC., a Maryland corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>TRAVEL MED, INC., a California corporation and GINA FLAHARTY, an individual and citizen of the State of California<br><br>        Defendants.<br>_____<br>TRAVEL MED, INC., a California corporation and GINA FLAHARTY, an individual and citizen of the State of California,<br><br>        Counter-Claimants,<br><br>    v.<br><br>PASSPORT HEALTH, INC., a Maryland corporation,<br><br>        Counter-Claim Defendants.<br>_____ | 2:09-cv-01753-GEB-JFM<br><br><u>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u> |

        Plaintiff Passport Health, Inc. moves for partial summary judgment on the liability issues in its first, second, fourth, and fifth

claims in its amended complaint. Defendants Travel Med, Inc. ("Travel Med") and Gina Flaharty ("Flaharty") (collectively, "Defendants") oppose the motion. For the reasons stated below, the motion is granted in part and denied in part.

## I. LEGAL STANDARD

"The moving party [for summary judgment] initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, --- F.3d ----, 2010 WL 4608794, at *5 (9th Cir. 2010). "When, as is the case here, the moving party is a plaintiff, he or she must adduce admissible evidence on all matters as to which he or she bears the burden of proof." Grimmway Enterprises, Inc. v. PIC Fresh Global, Inc., 548 F. Supp. 2d 840, 845 (E.D. Cal. 2008). If this burden is sustained, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 2010 WL 4608794 at *5. "[W]e must draw all reasonable inferences supported by the evidence in favor of the non-moving party . . . ." Guidroz-Brault v. Missouri Pacific R. Co., 254 F.3d 825, 827 (9th Cir. 2001). However, "[a] non-movant's bald assertions or mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009). Nor does "mere argument . . . establish a genuine issue of material fact to defeat summary judgment." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993).

Further, Local Rule 260 requires:

> Each motion for summary judgment . . . [to] be accompanied by a 'Statement of Undisputed Facts' that . . . enumerate[s] discretely each of the specific material facts relied upon in support of the motion and [to] cite the particular portions of any pleading, affidavit, deposition, interrogatory

2

>answer, admission, or other document relied upon to establish that fact. . . .
>
>Any party opposing a motion for summary judgment . . . [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

E.D. Cal. R. 260 (a)-(b).

A party failing to specifically "challenge the facts identified in the [movant's] statement of undisputed facts, . . . is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006) (finding that a party opposing summary judgment who "fail[s] [to] specifically challenge the facts identified in the [movant's] statement of undisputed facts . . . is deemed to have admitted the validity of [those] facts[.]"); see also Farrakhan v. Gregoire, 590 F.3d 989, 1002 (9th Cir. 2010) ("If the moving party's statement of facts are not controverted in this manner, 'the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy.'").

## II. UNCONTROVERTED FACTS

Plaintiff owns the trademark "PASSPORT HEALTH" and has registered this "trademark with the U.S. Patent and Trademark Office for travel-and health-care-related services[.]" (Plaintiff's Statement of Undisputed Facts ("SUF") ¶ 2.)

### A. Franchise Agreement

Passport Health and Travel Med entered into a Franchise Agreement in August 2007. Id. ¶ 3. Under the Franchise Agreement, Passport Health granted Travel Med the right, and Travel Med assumed the obligation, to operate a Passport Health franchise in a designated area

3

1  for ten years. Id. The Franchise Agreement's ten year term commenced in
2  September 2007, upon the opening of Travel Med's franchise. Id. Travel
3  Med made its last royalty payment to Passport Health in March 2009. Id.
4  ¶ 11. "After Travel Med breached the Franchise Agreement by failing to
5  make royalty payments to Passport Health, Travel Med unilaterally
6  terminated the Franchise Agreement effective June 12, 2009." Id. ¶ 13.
7  Passport Health "fully performed its obligations under the Franchise
8  Agreement." Id. ¶ 17.

In exchange for the right to own and operate a Passport Health franchise and use the Passport Health trademark, Travel Med promised to pay royalties to Plaintiff for the ten year term of the Franchise Agreement. Id. ¶ 4. The Franchise Agreement does not provide Travel Med a right of early termination. Id. Travel Med agreed in the Franchise Agreement that Plaintiff owns the Passport Health trademark. Id. ¶ 5. The Franchise Agreement includes provisions concerning Travel Med's post-termination obligations; specifically, upon termination of the Franchise Agreement, Travel Med was required to stop representing to the public that it is or was affiliated with Plaintiff and to stop using the Passport Health trademark. Id. ¶ 6.

**B. Guaranty**

When Travel Med executed the Franchise Agreement, Flaharty personally executed a Guaranty, guaranteeing that in the event Travel Med defaulted on its obligations, Flaharty would personally perform Travel Med's obligations under the Franchise Agreement. (SUF ¶ 7.) Flaharty has not performed Travel Med's obligations under the Franchise Agreement. Id. ¶ 18.

///
///

4

## C. Website

In September 2007, Defendants created a website for Travel Med at "www.passporthealthnca.com". (SUF ¶ 8.) "When Travel Med agreed to become a Passport Health Franchise, Travel Med was not provided with a URL to register by Passport Health. Instead, Travel Med was instructed to find something that was close to 'Passport Health' to register and to use as Travel Med's own website." (Separate Statement in Supp. of Defs.' Opposition ("SSS") ¶ 12.) "Pursuant to that instruction, Travel Med registered www.passporthealthnca.com as its own website on August 12 2007 and pre-paid for the registration for 4 years, ending in September 2011." Id.

"Even though Travel Med stopped making royalty payments to Passport Health in March 2009, Defendants admit that they used the PASSPORT HEALTH Trademarks through at least June 12, 2009." (SUF ¶ 12; SSS ¶ 15.) "[I]n preparation of ceasing to use Passport Health's name[,]" Defendants created a website for Travel Med at "www.travelmedinc.com". (SUF ¶ 9; SSS ¶ 12.) "Until at least July 20, 2010, Defendants' www.passporthealthnca.com website automatically redirected visitors to Defendants' www.travelmedinc.com website." (SUF ¶ 15.)

> After Passport Health's attorneys expressed concern regarding Travel Med's URL www.passporthealth.com in the summer of 2010, Travel Med added the statement: "Due to ongoing litigation with Passport Health, the owner of this URL and website, Travel Med Inc., is unable to redirect you at this time. We regret any inconvenience this may cause you.["] Both "Passport Health" and "Travel Med. Inc." are hyper links that take any visitor to the respective websites of Passport Health and Travel Med.

(SSS ¶ 13.)

///

///

5

## III. DISCUSSION

### A. Claim One, Breach of the Lanham Act

Plaintiff seeks summary adjudication on the liability portion of its first claim, in which it alleges Defendants violated "15 U.S.C. §§ 1114 and 1125(d) [of the Lanham Act] by continuing to use the PASSPORT HEALTH Trademarks after termination of the Franchise Agreement." (Mot. 9:26-28; Amended Compl. ¶¶ 19-34.)

#### 1. Trademark Infringement, 15 U.S.C. § 1114(1)(a)

Plaintiff argues Defendants violated § 1114(1)(a) by using the Passport Health trademark in the domain name "www.passporthealthnca.com" and by using that website to link to Defendants' website, "www.travelmedinc.com", for the purpose of marketing and promoting Defendants' competing travel services. (Mot. 10:3-12:4.) Plaintiff argues this usage of its trademark is likely to cause confusion or mistake among perspective or actual customers. Id.

"The Lanham Act allows the holder of a protectable trademark to hold liable any person who, without consent, 'use[s] in commerce any . . . registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services' which is likely to cause confusion." KP Permanent Make-Up Inc., v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir. 2005) (quoting 15 U.S.C. 1114(1)(a)). "To prevail on its trademark infringement claim, [Plaintiff] must show that: (1) it has a valid, protectable trademark, and (2) [Defendants'] use of the mark is likely to cause confusion." Applied Info. Sciences Corp. v. eBAY, Inc., 511 F.3d 966, 969 (9th Cir. 2007).

Registration of a trademark "on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark[.]" Brookfield Commc'ns, Inc. v. W.

6

Coast Entm't Corp., 174 F.3d 1036, 1047 (9th Cir. 1999). It is undisputed that Plaintiff registered its trademark. (SUF ¶ 2.)

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods [or services] it represents are associated with the source of a different product [or service] identified by a similar mark." KP Permanent Make-Up, 408 F.3d at 608.

> To analyze likelihood of confusion, we consider the following eight factors . . . : (1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) the defendants' intent; and (8) liklihood of expansion.

Surfvivor, 406 F.3d at 631. "The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of [the factors.]" Id.

The "www.passporthealthnca.com" domain name is confusingly similar to Plaintiff's trademark, "Passport Health", since it incorporates entirely Plaintiff's trademark. See Perfumebay.com Inc. v. Ebay, Inc., 506 F.3d 1165, 1174 (9th Cir. 2007) (finding the domain name "perfumebay.com", which completely incorporates eBay's trademark, "reflects the requisite similarity between the two marks"). In addition, there is no dispute that Plaintiff and Travel Med offer "competing travel health services[.]" (SUF ¶ 14.) "Related [services] are generally more likely than unrelated [services] to confuse the public as to the [providers] of the [services]." Brookfield, 174 F.3d at 1055. Since Plaintiff and Travel Med are offering competing services, Defendants' use of Plaintiff's trademark in the "www.passporthealthnca.com" domain name creates a likelihood of confusion.

Defendants use of Plaintiff's registered trademark is likely to cause confusion and therefore, Defendants violated § 1114(1)(a) of the Lanham Act. Therefore, Plaintiff is granted a permanent injunction

7

1  preventing Defendants' continued use of the "www.passporthealthnca.com"
2  domain name.

### 2. Cybersquatting, 15 U.S.C. § 1125(d)

4  Plaintiff also seeks summary adjudication on the liability
5  portion of its claim that Defendants violated § 1125(d) by using the
6  Passport Health trademark in the domain name "www.passporthealthnca.com"
7  to market and promote Defendants' travel services at their own website,
8  "www.travelmedinc.com". (Mot. 12:6-13:20.) Defendants argue "[t]here has
9  been no action by Defendants to confuse the public and no evidence that
10 Defendants acted in bad faith to 'cybersquat' as alleged in Plaintiff's
11 motion." (Opp'n 8:24-25.)

12  "The Anti-Cybersquatting Consumer Protection Act establishes
13 civil liability for 'cyberpiracy' where a plaintiff proves that (1) the
14 defendant registered, trafficked in, or used a domain name; (2) the
15 domain name is identical or confusingly similar to a protected mark
16 owned by the plaintiff; and (3) the defendant acted 'with bad faith
17 intent to profit from that mark.'" DSPT Intern., Inc. v. Nahum, 624 F.3d
18 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)). "Even
19 if a domain name was put up innocently and used properly for years, a
20 person is liable under 15 U.S.C. § 1125(d) if he subsequently uses the
21 domain name with a bad faith intent to profit from the protected
22 mark[.]" Id. at 1224.

23  Defendants registered the domain name,
24 "www.passporthealthnca.com" and continue to use it by providing visitors
25 to this website with a link to Defendants' website. Defendants had
26 permission to use Plaintiff's trademark, pursuant to the terms of the
27 Franchise Agreement, when they registered the domain name. However,
28 Travel Med terminated the Franchise Agreement, following which

8

1  Defendants were required to discontinue using Plaintiff's trademark. In
2  addition, the "www.passporthealthnca.com" domain name is confusingly
3  similar to Plaintiff's trademark, "Passport Health".
4  　　　　Plaintiff argues it "is undisputable that Defendants have
5  acted in bad faith in using the passporthealthnca.com domain name to
6  drive and divert traffic to a website for their competing business."
7  (Mot. 13:12-14.) "In determining whether [Defendants have] a bad faith
8  intent . . . a court may consider factors" enumerated in 15 U.S.C. §
9  1125(d)(1)(B)(i). Plaintiff argues "[a]pplication of these factors
10 demonstrates Defendants' bad-faith intent." (Mot. 13:21.) However, there
11 is a genuine issue of material fact regarding whether Defendants acted
12 with bad faith intent and therefore, Plaintiff's motion for summary
13 adjudication on its claim that Defendants violated § 1125(d) is denied.

**B. Claims Two and Four, Breach of the Franchise Agreement**

15 　　　　Plaintiff also seeks summary adjudication on the liability
16 issues involved with its breach of the Franchise Agreement claims. (Mot.
17 5:28-6:3, 6:23-7:2, 8:4-6; Amended Compl. ¶¶ 35-40, 44-49.)
18 　　　　Plaintiff submitted uncontroverted evidence showing that
19 Passport Health and Travel Med entered into the Franchise Agreement for
20 a term of ten years, commencing in September 2007. (SUF ¶ 3.) Under the
21 Franchise Agreement, Travel Med was to pay Passport Health royalties.
22 Id. ¶ 4. The last royalty payment Travel Med made was in March 2009,
23 following which Travel Med terminated the Franchise Agreement effective
24 June 12, 2009. Id. ¶¶ 11, 13. Travel Med defaulted on its obligations by
25 discontinuing payments and terminating the Franchise Agreement.
26 　　　　Defendants argue their affirmative defense alleged under
27 California's unclean hands doctrine defeats Plaintiff's breach of the
28 Franchise Agreement claims. (Opp'n 11:16-22.) Defendants argue that

9

Plaintiff "has unclean hands as it relates to attempting to collect royalty fees against Defendants" because Plaintiff "committed wire fraud as it relates to Travel Med's group purchase organization and then denied and attempted to cove[r] up its actions." Id. 10:4-6. Plaintiff argues "defendants cannot, as a matter of law, prove the fraudulent intent required under the wire fraud statute (or any of the other elements of wire fraud), and therefore cannot prove that Passport Health has unclean hands." (Reply 13:9-11.)

The doctrine of unclean hands applies "if the inequitable conduct occurred in a transaction directly related to the matter before the court and affects the equitable relationship between the litigants. In short, the misconduct must infect the cause of action before the court." Unilogic, Inc. v. Burroughs Corp., 10 Cal. App. 4th 612, 621 (1992) (citation and internal quotation marks omitted). "Accordingly, relief is not denied because the plaintiff may have acted improperly in the past or because such prior misconduct may indirectly affect the problem before the court." Fibreboard Paper Products Corp. v. East Bay Union of Machinists, 227 Cal. App. 2d 675, 728-29 (1964).

Defendants argue Plaintiff committed wire fraud when Plaintiff's CEO altered and then transmitted a document via fax across state lines. Defendants rely on the following portion of Flaharty's declaration in support of this argument: "Travel Med was a member of a group purchase organization with GlaxoSmithKlien ("GSK") for the purchase of vaccines at discounted rates" and Plaintiff's CEO "transmitted a document to GSK to cancel [Defendants'] existing group purchase organization and to transfer [Defendants] to the Passport Health group purchase organization." (Decl. of Flaharty ¶ 10.) However, Flaharty's averments neither demonstrate that Plaintiff committed wire

fraud, nor that the alleged misconduct occurred in a transaction directly related to the rights and responsibilities of the parties under the Franchise Agreement.

Defendants also argue their affirmative defense of illegality defeats Plaintiff's breach of the Franchise Agreement claims. (Opp'n 11:16-22.) Defendants argue this illegality defense consists of the use of Plaintiff's software, which exposes patients' confidential information, in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the California Confidentiality of Medical Information Act ("CMIA"). Id. 11:12-18. Defendants argue because of these illegal acts, they "felt a moral and ethical obligation to disassociate from Passport Health based on its illegal activities and based on Passport Health's attempts to cover up its wrongdoing." Id.

"A contract is properly held unenforceable pursuant to the doctrine of illegality only where the party asserting the defense is incapable of following both the contract and the law. If there are, on the other hand, facts or circumstances under which the contract could be held valid, the defense of illegality will not lie." Pet Food Express, Ltd. v. Royal Canin USA Inc., No. C 09-1483 MHP, 2010 WL 583973, at *4 (N.D. Cal. February 16, 2010). Defendants have not offered evidence showing that the Franchise Agreement is illegal. Although Defendants allege the use of Plaintiff's software was a violation of HIPAA and CMIA, Defendants have not demonstrated that use of Plaintiff's software was required under the Franchise Agreement.

Since Defendants' affirmative defenses do not demonstrate a genuine issue of material fact exists for trial, Plaintiff is granted summary adjudication on the liability portion of its breach of the Franchise Agreement claims.

### C. Claim 5, Breach of Guaranty

Plaintiff seeks summary adjudication on the liability portion of claim five in which it alleges Flaharty breached the Guaranty. (Mot. 8:9-13, 9:9-11; Amended Compl. ¶¶ 50-54.) Plaintiff has submitted uncontroverted evidence that Passport Health and Gina Flaharty entered into the Guaranty in which Flaharty agreed to personally perform Travel Med's obligations under the Franchise Agreement in the event Travel Med defaulted on its obligations. (SUF ¶ 7.) Flaharty has not performed under the Guaranty. Id. ¶ 18. Defendants repeat their arguments that their affirmative defenses of unclean hands and illegality preclude summary adjudication on this claim. (Opp'n 7:8-8:7, 9:1-11:18.) However, these arguments do not present a genuine issue for trial. Therefore, Plaintiff is granted summary adjudication on the liability portion of this claim.

### IV. CONCLUSION

For the stated reasons, Plaintiffs' motion for partial summary judgment is granted in part and denied in part. Further, Plaintiff's request for a permanent injunction is granted as follows:

Defendants, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them, are hereby permanently enjoined from using the Passport Health trademark, including the use of the "www.passporthealthnca.com" domain name.

Defendants shall transfer the "www.passporthealthnca.com" domain name to Passport Health within ten days after this Order is filed.

Pursuant to the parties' agreement during the hearing on the motion sub judice, Defendants shall deliver to Passport Health all

12

refrigerator magnets and yard signs with the Passport Health trademark and Passport Health's operations manual within ten days after judgment is entered in this case. However, if this case is resolved without entry of judgment, the referenced delivery shall be within ten days that resolution of the case.

Dated:   February 9, 2011

_____
GARLAND E. BURRELL, JR.
United States District Judge